1
2
3
4
5
6
7
8
9

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **BRANDON ELLIS,** | ) | **CV F 05-1474   AWI SMS** |
| | ) | |
| **Plaintiff,** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER GRANTING IN** |
| **v.** | ) | **PART AND DENYING IN** |
| | ) | **PART DEFENDANTS'** |
| **CITY OF REEDLEY; REEDLY** | ) | **MOTION FOR SUMMARY** |
| **POLICE DEPARTMENT; and DOES 1** | ) | **JUDGMENT OR IN THE** |
| **through 50, inclusive,** | ) | **ALTERNATIVE SUMMARY** |
| | ) | **ADJUDICATION** |
| **Defendant**s. | ) | |
| | ) | **Document # 28** |

This is an action for damages by plaintiff Brandon Ellis ("Plaintiff") against
defendants City of Reedley and Reedley Police Department ("Defendants") for wrongful
termination and unlawful disability discrimination.  The action arises out of Plaintiff's
termination from the Reedley Police Department ("Department") during the probationary
period of his employment.  The complaint alleges one claim for relief for violation of a
constitutionally guaranteed right under 42 U.S.C., section 1983, and three claims for relief
under California's Fair Employment and Housing Act.  In the instant motion, Defendants
seek summary judgment as to all Plaintiff's claims for relief, or, in the alternative, partial
summary adjudication.  Removal jurisdiction exists pursuant to 28 U.S.C., sections 1331 and
1441.  Venue is proper in this court.

**PROCEDURAL HISTORY**

This case, which was originally filed in Superior Court of Fresno County, was removed to this court on November 21, 2005.  The currently operative pleading is the First Amended Complaint ("FAC"), which was filed on April 7, 2006.  The instant motion for summary judgment was filed by Defendants on January 26, 2007.  Plaintiff's opposition was filed on February 12, 2007, and Defendants' reply was filed on February 20, 2007.  Defendants' motion for summary judgment was taken under submission on February 22, 2007.

**UNDISPUTED MATERIAL FACTS**

The parties generally agree as to the bulk of the undisputed material facts.  Plaintiff's most common objections are to the form of Defendants' proffered facts, which Defendants often express as testimony supporting the proffered fact rather than the fact itself.  Plaintiff's objections as to the form of Defendants' proffered facts are noted and the proffered facts are adjusted to set forth the underlying fact, rather than the supporting testimony.  Where there are substantive disputes as to the accuracy of a proffered fact, the disputation is noted.  Plaintiff's proffered disputed material facts are incorporated into the following discussion where relevant.

Plaintiff was sworn in as a Reserve Police Officer for defendant Reedley Police Department ("Department") on May 1, 2003.  Plaintiff was moved from reserve status to probationary police officer on December 15, 2003.  As a probationary officer, Plaintiff was employed in an at-will status for a term of one year.  Upon successful completion of the one-year term of probationary employment, Plaintiff would be eligible for promotion and retention as a permanent employee.

On October 9, 2004, the City of Reedley held one of its annual community events known as "Fiesta" which consists of a parade and other civic activities.  Plaintiff alleges he was told that it was mandatory that all able officers report for inspection on the morning of

2

Fiesta and thereafter provide patrol during the parade.  Plaintiff was told failure to attend would have a negative effect on his subsequent employment.  The night prior to Fiesta, Plaintiff worked from 4:00 p.m. to 2:00 a.m. and, after driving home and washing his car, slept about two hours before getting up to report for his shift on October 9, 2004.  Plaintiff arrived at the Department at approximately 6:50 a.m. and worked parade detail at Fiesta until approximately 1:00 p.m. on October 9, 2004.  Plaintiff's next shift was set to begin at 4:00 p.m. the same day.

Plaintiff had been experiencing a headache since he woke up on October 9, and he began to experience symptoms he has previously experienced in connection with migraine headaches by 1:00 p.m.  Plaintiff alleges that, rather than drive the considerably longer distance to his home, a fellow officer, Preston Ballinger ("Ballinger") suggested that Plaintiff come to his house to rest, hydrate and take a pain reliever.  Defendants characterize the invitation as being to attend the birthday party of one of Ballinger's children.  Plaintiff vigorously disputes this characterization and alleges the invitation was to use some spare area at Ballinger's house to rest and recuperate because Ballinger's house was much closer to the Department than Plaintiff's house.  The parties agree that Plaintiff went to Ballinger's house. Plaintiff alleges that while there, he rested at shady area some distance from the birthday celebration, drank some liquids, ate some food, and took a pain reliever.  While resting at Ballinger's house, Plaintiff alleges he began to experience blurring of vision which he experienced before as a part of his migraine headaches.  Plaintiff alleges this blurring of vision makes it unsafe for Plaintiff to drive.

At approximately 3:00 p.m. on October 9, 2004, Plaintiff called Department dispatcher Kim stating he could not make it to his 4:00 p.m. to 2:00 a.m. shift stating "I don't feel good, have a bad headache . . . ."  Plaintiff provided dispatcher Kim with his cell phone number if there was need for a follow-up on Plaintiff's sick call.  Sergeant Mooridian ("Mooridian") called Plaintiff while Plaintiff was at Ballinger's house.  Mooridian asked

3

Plaintiff if Plaintiff was truly sick and Plaintiff responded that he was.  Mooridian asked Plaintiff if Plaintiff was at the birthday party for Ballinger's child.  Defendants claim that Plaintiff replied in the affirmative.  Plaintiff alleges he informed Mooridian that Plaintiff was at Ballinger's house where party was going on.  Plaintiff alleges he was 100 yards away from the party and behind a fence that obscured the line of sight from where Plaintiff was sitting to where the party was going on, but he does not allege that he gave Mooridian that information.

Mooridian informed Plaintiff that Plaintiff and Mooridian would talk about Plaintiff's sick call when Plaintiff returned to work for his next shift.  The following day, October 10, 2004, Plaintiff was contacted by Kay Pierce, assistant to Chief Johnson, who advised that Plaintiff would need to come in an hour prior to the commencement of his shift on October 11, 2004, to meet with Lt. Garza.

There is some minor dispute as to the actual content of the conversation that occurred between Lt. Garza and Plaintiff.  Drawing from both Defendants' and Plaintiff's allegations and supporting documents, the court finds the following are the undisputed facts for purposes of Defendants' motion for summary judgment.  Lt. Garza asked Plaintiff what happened when Plaintiff called in sick on October 9.  Plaintiff replied that he had gone to Ballinger's house because is was much closer to the Department than Plaintiff's house in Selma.  It is not entirely clear from Plaintiff's disputation of Defendants proffered material fact whether Plaintiff actually told Lt. Garza he was at a birthday party.  Plaintiff told Lt. Garza that Plaintiff was trying to recover from a migraine headache which was causing a blurring of Plaintiff's vision and making it unsafe for Plaintiff to drive.  Lt. Garza presented Plaintiff with letter written by Mooridian indicating Mooridian's account of her conversation with Plaintiff.  Lt. Garza then told Plaintiff that it was Garza's opinion that Plaintiff had been untruthful and that Plaintiff's probationary employment was being terminated for "integrity and honesty issues."  Plaintiff alleges Lt. Garza presented Plaintiff with termination papers that had already been filled out prior to the interview.  Plaintiff also alleges Lt. Garza never

asked Plaintiff to produce corroborating materials to support his account of the facts.

After being told he was to be terminated by Lt. Garza, Plaintiff requested to speak with Chief Johnson.  Plaintiff alleges that he was told by Lt. Garza "the decision's already been made, but you can talk to [Chief Johnson]."  Plaintiff alleges he was allowed to present his side of the story to Chief Johnson, but Plaintiff felt the Chief was not listening and that the decision had already been made.  After presenting his version of the facts, Plaintiff alleges he was told by Chief Johnson that "it was out of [Johnson's] control and the decision had already been made."  Chief Johnson ratified Lt. Garza's decision to terminate Plaintiff's probationary employment.

There is not dispute that Plaintiff filed his FEHA claim with the Department of Fair Housing and Employment, the claim was rejected and Plaintiff was given a right to sue letter. It is also not disputed that Plaintiff does not recall ever disclosing, either on his medical questionnaire at the time of hiring or verbally to any supervising officer, that he suffers from occasional migraine headaches.  Plaintiff recalls disclosing to a small number of fellow officers his history of childhood cancer and a susceptibility to migraine headaches.  Plaintiff answered "no" on his medical history form to the question of whether he suffered recurrent headaches.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,"

5

which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party has the burden of proof at trial, that party must carry its initial burden at summary judgment by presenting evidence affirmatively showing, for all essential elements of its case, that no reasonable jury could find for the non-moving party.  United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc); Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986); see also E.E.O.C. v. Union Independiente De La Autoridad De Acueductos Y Alcantarillados De Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002) (stating that if "party moving for summary judgment bears the burden of proof on an issue, he cannot prevail unless the evidence that he provides on that issue is conclusive.")

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

## DISCUSSION

### I.  Claim for Constitutional Violation Pursuant to 42 U.S.C., section 1983

Plaintiff contends he suffered an infringement of his right to due process under the Fifth and Fourteenth Amendments when the Department terminated his employment alleging a lack of integrity.  Plaintiff alleges that Defendants infringed Plaintiffs protected liberty interest when Defendants terminated Plaintiffs employment and failed to provide Plaintiff an adequate opportunity to respond to what Plaintiff alleges were false allegations made against

him by Defendants.

"The Fourteenth Amendment's guarantee of due process applies when a constitutionally protected liberty or property interest is at stake. [Citation.]"  Matthews v. Harney County, Oregon, School Dist. No. 4, 819 F.2d 889, 891 (9 Cir 1987) (citing Board of Regents v. Roth, 408 U.S. 564, 569 (1972) ("Roth").  There is no dispute that Plaintiff was, at the time of his termination, an at-will probationary employee.  As such, there is no dispute that Plaintiff did not have a reasonable expectation of continued employment, and so had no constitutionally guaranteed *property* interest in his job.  Brady v. Gebbie, 859 F.2d 1543, 1548 (9th Cir. 1988).  Because Plaintiff did not have a constitutionally guaranteed property interest in his employment, he cannot claim infringement of a constitutionally protected right based on his termination per se.  The issue is therefore not whether Defendants' decision to terminate Plaintiff's employment was justified, but rather whether the process employed violated a constitutionally protected interest.

Separate and apart from property interests, a worker possesses "a liberty interest 'to engage in any of the common occupations of life;'" that is protected from state interference by the Fourteenth Amendment.   Campanelli v. Bockrath, 100 F.3d 1476, 1478 (9 Cir. 1996). This liberty interest is implicated where a state actor, in declining to rehire or continue employment, makes any charge against the employee "that might seriously damage his standing and associations in his community."  Roth, 408 U.S. at 573.  "For 'where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' [Citations.]"  Id.  In the context of termination of employment, the Ninth Circuit has determined that the former employee's liberty interest is implicated where the state employer made charges that impair a reputation for honest or morality and where "(1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) the charge is made in connection with termination of employment.  Where these conditions are met, due process requires a pre-

8

termination hearing that "affords the employee notice and a meaningful opportunity to speak in his defense." Id. at 892.

Defendants argue Plaintiff was not entitled to a hearing because he did not refute the facts that lead to his termination. Defendants contend Plaintiff's termination was based on two uncontested underlying "facts:" "(1) [Plaintiff] called in sick for his shift; (2) [Plaintiff] called in sick for his shift while at a party thrown by [Officer] Ballinger." Defendants contend that, based on these *facts*, Officers Mooridain, Garza, and Chief Johnson "all formed the *opinion* that [Plaintiff] was untruthful and should therefore be terminated." Doc. #28 at 11:7 - 11:9 (italics in original).

The court is not convinced by Defendant's attempt to partition *facts* from *opinion* in this manner. The central *fact* is Plaintiff was terminated for lying; not for attending a party, and not for calling in sick while at a party. The core *fact* behind Plaintiff's termination is the inference of a lie. Neither of the other "facts" are actionable, either by themselves or in combination, because Plaintiff was "off the clock." Neither being at a party during off-hours (assuming, *arguendo*, Defendants' version of the facts) or calling in sick, if an employee is in fact sick, are reasons for termination. Plaintiff has continuously and vigorously maintained he did not lie when he called in sick. In addition, although of less significance, Plaintiff also has continuously maintained he was not actually in attendance at the party, but was at some distance from the party and trying to rest and cool down.

The facts and holding in Codd v. Velger, 429 U.S. 642 (1977) are not helpful to Defendants' contentions in this case. In Codd, a probationary police officer alleged he was stigmatized because it had been reported in his police file that he had put a revolver to his head in an apparent suicide attempt. Id. at 626. In that case, the Supreme Court declined to reach the issue presented of whether there had been publication of stigmatizing information, and instead ruled that the plaintiff in that case had failed to make out a claim of stigmatization under Roth because the plaintiff had not refuted the basic factual nature of the

stigmatizing charge.  Id. at 627.  Rather, the plaintiff in Codd, had offered nothing more that an explanation that the act of putting the gun to his head may have been nothing more than horseplay or a "mistake."  Id. at 628-629.  The Court in Codd held that the plaintiff's proffer of explanations for what was admittedly the behavior that formed the basis of the stigmatizing information was not sufficient to constitute an effort to refute the facts.  The elements of Roth were therefore not fulfilled and the plaintiff had not stated a claim for violation of a liberty interest.  Id.

Where the issue is whether the accuracy of the charge is contested within the meaning of Matthews, the focus is on the allegation or allegations that give rise to the stigma.  See, e.g., Lurkin v. City and County of San Francisco, 187 Cal.App.3d 807, 812 (1st Dist. 1986) (although "probationary employee may not be discharged without opportunity for hearing if the discharge inflicts stigma, such opportunity is not required when the employee does not deny the allegations which give rise to the stigma').  Focusing on the charge that gives rise to the stigma in this case, the court must conclude that the charge is lying.  A charge of dishonesty or lying is sufficient to constitute stigma, and therefore damage to a plaintiff's liberty interests within the meaning of Roth.  Campanelli v. Blockrath, 100 F.3d 1476, 1478 (9th Cir. 1996).  The court finds Plaintiff has contested the charge.

Plaintiff alleges there was publication of the allegation of untruthfulness and Defendants do not allege the contrary.  Likewise, there is no dispute that the charge of lying or "integrity" issues arose in the context of Plaintiff's termination.  Consequently, the court finds that Plaintiff has established a prima facie case that the factors that trigger an entitlement to a  hearing pursuant to Matthews, were met.  Matthews, 819 F.2d at 891, 892.  Correspondingly, the court finds Defendants have not adequately established the lack of any material fact as to whether Plaintiff was not entitled to a hearing and the court consequently rejects Defendants' contention that no hearing was warranted under the facts of this case.

Plaintiff also makes the independent allegation that after Chief Johnson had ratified

the decision to terminate Plaintiff's employment, Johnson "shared with the assembled sergeants a rumor he had received information that Brandon was involved in or using narcotics." Defendants do not dispute that the alleged disclosure of the rumor occurred, Defendants contend that the disclosure is not relevant to Plaintiff's claim because it was not made in connection with Plaintiff's termination. Defendants' argument, as the court understands it, is that Plaintiff was told that he was being terminated for integrity issues and that Plaintiff was not told there were any issues related to narcotic use.

The court finds Defendants' argument is misfocused with respect to the allegation there was a publication of a rumor of narcotics use. As Defendants point out, and as previously discussed, the issue at the heart of Plaintiff's claim of infringement of a liberty interest is not the validity of the reason for Plaintiff's termination. Rather the issue is whether stigmatizing statements were made in *connection* with the adverse action that are of such a nature as to impair the plaintiff's associations in the community, and presumably therefore, impair his liberty to seek other employment. The issue therefore is whether Plaintiff was discharged with a cloud over his reputation and without an adequate opportunity to remove that cloud.

The court finds that Chief Johnson's remarks to the assembled officers after the decision to terminate Plaintiff's employment were made were of a stigmatizing nature and were made in connection with Plaintiff's termination within the meaning of Matthews. Because Defendants have not refuted the content of the Johnson's alleged statements or the fact of their publication to the assembled police officers, the court finds there remains an issue of material fact as to whether Plaintiff was entitled to a name-clearing hearing on the issue of the allegation of narcotics use.

Having determined that Plaintiff was entitled to a hearing, the question arises, what level of review was necessary? "To determine what process is due in an individual case – and if it is due before or after the deprivation of a constitutionally protected interest – a court

must apply the three-part test set out in Mathews v. Eldridge, 424 U.S. 319, 334-35 [. . .] [1976].  That test balances 1) the private interest that will be affected, 2) the risk of an erroneous deprivation of that interest through the procedures used, and 3) the additional cost and administrative burdens that the additional procedures would entail."  Brady, 859 F.2d at 1554.

In this case, Plaintiff's possesses a liberty interest that may be injured by the publication of stigmatizing information prior to or concurrent with his termination.  This is weighed against the interests of the public to timely remove from a job individuals not qualified for the job.  Given that the risk to the public is relatively minor in this case; that is, that an employee might gain a paid day off by lying about his physical fitness to work, the court finds Plaintiff's potential damage to his liberty interest outweigh legitimate public concerns.  Further, the additional procedures required to provide notice and an opportunity to be heard pre-termination are of little inconvenience in this case since the public entity, the Police Department, has control over and access to the testimony of all relevant witnesses. The court concludes that Plaintiff, having a legitimate liberty interest in preventing publication of, or effectively refuting stigmatizing information prior to its publication, is entitled to opportunity to respond to the charges alleged by Defendants in pre-termination proceedings.

Generally, where pre-termination proceedings are due, the pre-termination procedure must satisfy due process within the meaning of Cleveland Board of Education v. Laudermill, 819 F.2d 889, 892 (9th Cir.) ("Laudermill").  Matthews, 819 F.2d at 892.  While something less than a full evidentiary hearing is necessary, at a minimum there must be "notice and an opportunity to respond.  The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." Laudermill, 819 F.2d at 545, 546.  The notice and the opportunity to be heard must be meaningful.  Brady v. Gebbie, 859 F.2d 1543, 1554 (9th Cir. 1988).  To be meaningful, the

12

opportunity to be heard; that is, to clear one's name, must *precede* the *decision* to terminate. Id. at 1554-1555 (emphasis added).  Likewise notice, in order to be meaningful, must provide at minimum notice of the contemplated termination, the reasons for the contemplated termination, and sufficient time to formulate a response.  Id.

With regard to notice, the court finds Defendants have failed to allege facts sufficient to establish that there remains no disputed issue of material fact as to whether Plaintiff received adequate notice to satisfy due process requirements.  Accepting Defendants undisputed material facts as set forth, the notice Plaintiff allegedly received was only Sergeant Mooridian' statement to Plaintiff that "we need to talk about this [that is, Plaintiff's call stating he was not fit for service] whenever you come back to work," Defendants UMF #74, and Kay Pierce's telephone call to Plaintiff on the day before Plaintiff returned to work informing Plaintiff he was to report an hour early to talk to Lieutenant Garza.  Defendants' UMF #'s 75-76.  Defendants do not allege Plaintiff was informed that his termination was being contemplated, or that the charge was dishonesty or that Plaintiff would be afforded the right to present rebuttal evidence.  Plaintiff alleges he was surprised when he learned at his meeting with Garza that the subject under consideration was Plaintiff's termination.  To the extent there is any suggestion by Defendants that the notice Plaintiff received when he arrived at the Monday morning meeting with Lieutenant Garza was sufficient for purposes of due process, that contention is rejected on the ground that the requirements of due process as set forth in Laudermill require notice sufficiently in advance of the hearing to provide adequate opportunity for preparation.

As to the requirement for a meaningful opportunity to be heard, the court also finds there remains a disputed issue of material fact as to whether Plaintiff was afforded an opportunity to be heard *before* the decision was made to terminate his employment.  Plaintiff alleges that he was told Lieutenant Garza had made the decision to terminate Plaintiff's employment before Plaintiff's meeting with Garza, and subsequently with Chief Johnson.

13

Defendants rely primarily on Plaintiff's statement during deposition that Plaintiff had the opportunity to explain his side of the story to Lt. Garza.  Plaintiff alleges that the same deposition shows that Plaintiff "was told he was going to [be] fired after being given a copy of Mooridian's memo but that was after Garza had told [Plaintiff] that [Plaintiff's] evaluation had been changed to reflect that his attendance and honesty were no longer good because [Plaintiff] had called in sick and was at a Party' and that [Plaintiff] was fired for 'honesty and integrity issues' without being given the opportunity to respond to the factual assertions in the memo because in Garza's mind the 'decision had already been made.'"

The court has reviewed the cited deposition testimony and finds the statements set forth fail to establish the absence of any issue of material fact as to whether Plaintiff was given a meaningful opportunity to be heard prior to the decision that he be terminated.  At minimum, Plaintiff's deposition testimony supports Plaintiff's allegation that Officer Mooridian had concluded that Plaintiff was lying about the reason for his claim of unfitness to report for duty and had communicated to Garza the conclusion that Plaintiff was lying.  Plaintiff's testimony also tends to support his contention that his termination papers were already filled out and signed before he talked to Garza.  Defendants have failed to carry their burden to refute the issue of material fact raised by Plaintiff concerning whether he was granted an opportunity to be heard prior to the decision to terminate his employment.

Therefore, the court must conclude there remains an issue of material fact as to whether Plaintiff was accorded due process by receiving notice and an opportunity to refute the charges against him.  Defendants' motion for summary judgment as to Plaintiff's first claim for relief will therefore be denied.

## II. Disability Discrimination

California Government Code, section 12940(a)[1] provides that an employer may not,

---

[1]   Section numbers hereinafter refers to sections of the California Government Code unless otherwise specified.

subject to certain exceptions not relevant here, discharge, or otherwise discriminate against an employee on the basis of, among other factors, a medical or mental condition.  Because FEHA is an anti-discrimination law patterned after the federal Americans With Disabilities Act, courts have held that defensive motions challenging claims under FEHA follow the well-established burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973).  Diaz v. Federal Express Corp., 373 F.Supp.2d 1034, 1062-163 (C.D. Cal. 2005).  "The three stages [of the McDonnell Douglas test] are (1) the plaintiff bears the initial burden of establishing a prima facie case of discrimination; (2) the employer must then offer a legitimate nondiscriminatory reason for the adverse employment decision; and (3) the plaintiff bears the burden of proving the employer's proffered reason was pretextual."  Green v. Par Pools, Inc., 111 Cal.App.4th 620, 624 (4th Dist. 2003).  This test has been applied in the context of a defendant's motion for summary judgment.  Id.; Slatkin v. University of Redlands, 88 Cal.App.4th 1147, 1156 (4th Dist. 2001). "'Although the McDonnell Douglas presumption shifts the burden of production to the defendant, the ultimate burden of persuading the trier of fact that the defendant engaged in intentional discrimination remains at all times with the plaintiff.' [Citations]" Diaz, 373 F.Supp.2d at 1063.

"[I]n order to establish a prima facie case of discrimination, a plaintiff must show (1) he suffered from a disability, (2) he was otherwise qualified to do his job, and (3) he was subjected to adverse employment action *because of* his disability." Diaz , 373 F.Supp.2d at 1063 (italics added).

Defendants contend that Plaintiff has failed to establish that he suffers from a physical disability within the definition of FEHA.  Section 12926(k) provides, in pertinent part:

"Physical disability" includes, but this is not limited to, all of the following:

(1) Having any physical disease, disorder, condition, cosmetic disfigurement, or anatomical loss that does both of the following:

(A) Affects one or more of the following body systems: neurological, . . ., musculoskeletal, special sense organs, [. . . .]

15

(B) Limits a major life activity.

Pursuant to section 12926(k), a "major life activity" is to be broadly construed to include working. There little guidance on the extent of limit that is necessary to constitute a limit on a major life activity within the meaning of section 12926(k). Diaz, 373 F.Supp.2d at 1049-1050. The court accepts that migraine headaches *may*, in the abstract, cause limitation of a major life activity sufficient to constitute a physical disability. See Kimbro v. Atlantic Richfield Co., 889 F.2d 869, 872 (9th Cir. 1989) (describing a condition called "cluster migraines," which the court concluded constituted a handicap under a similar Washington State statutory scheme). However, mere susceptibility to migraine headaches is not, without more, sufficient to establish a disability because susceptibility by itself produces no symptoms and is therefore not limiting. The pertinent question for purposes of the present analysis is what level and duration of symptoms resulting from the disease or condition constitutes a limitation of a major life activity.

In Diaz, the Central District determined that a plaintiff who suffered from a mental condition for a period of about seven months could not be said to not have a disability on account of the limited duration of the limitation on the plaintiff's life activities as a matter of law, and that the issue was a matter for the trier of fact. Diaz, 373 F.Supp.2d at 1053. The Diaz court, noting California Legislature's specific instructions that "the FEHA definition of 'disability' is to be construed more broadly than the definition of 'disability' under the [Americans With Disabilities Act]," expressed reluctance to find that any limitation on a major life activity, no matter how temporary, would be excludeable as a matter of law from the category of disability. Id. at 1052-1053. Of note, the Diaz court opined:

> Defendant's argument boils down to an assertion that the Legislature could not possibly have intended for temporary ailments to constitute "disabilities" under the FEHA, because this would mean that every citizen in California who suffered from a cold, the flu, or the degree of stress or depression that most employees in the workplace experience would be "disabled" under the FEHA and this would be an absurd result. However, the mere fact that a statute is "absurd" does not preclude a finding that it is what the Legislature intended, especially since Defendant does not seem to have a textual foothold for the

16

proposition that the Legislature intended to include a durational requirement in its definition of "disability."  The court declines to draw such a conclusion based on the Legislature's silence, especially in light of the Legislature's specific instructions in section 12926.1 that the FEHA definition of "disability" is to be construed more broadly than the definition of "disability" under the ADA.

Id.

The court declines to follow the Central District's line of reasoning this far.  The concept of disability necessarily incorporates the idea of exceptionality.  If a condition is universal, it cannot be said to be a disability because all members of the society are burdened equally with respect to that condition.  While it is the evident intent of Legislature to construe the definition of disability broadly, the fact Legislature used the term "disability" indicates an intent to apply some limitation as to the universe of potential claimants; that is, to provide a cause of action to those who are the exception by reason of the extent or duration of the limitations imposed by their medical or mental condition on a major life function.  Put bluntly, if legislature had intended to protect workers from adverse employer action if they simply called in sick from the flu or who took a "mental health day off," legislature would have so stated, rather than providing relief only to those with a "disability."

It is this court's opinion that Diaz supports the proposition that the term "disability" may incorporate a condition of only temporary duration, but that the condition must have at least a minimal duration within the time period relevant to the claim that is sufficient to constitute an actual limitation of a major life activity, as opposed to simply the need to take a day off.  With that in mind, the court finds that Plaintiff has failed to allege facts sufficient to support his contention that he is or was disabled with the meaning of the term "disability" as defined in section 12926(k).  Plaintiff alleges that, as a result of childhood cancer, he has a greater susceptibility to migraine headaches.  While Plaintiff alleges he suffers from "infrequent" migraine headaches, he does not allege that he has ever suffered a migraine during either his former employment or at any time during his probationary employment with Defendants, except for the one instance that gave rise to his termination.   This places Plaintiff

17

in the class of the great majority of people who may occasionally suffer a bout of the flu or some similar temporary malady that requires them to take a day off, but who cannot logically be termed "disabled."

Even if Plaintiff's claim does adequately set forth facts to support Plaintiff's claim that he suffers a "disability," Plaintiff's claim for disability discrimination fails nonetheless because Plaintiff did not suffer an adverse job action *because of* his disability.  With respect to claims under the ADA and, by extension under FEHA, in order to prove a claim of discrimination a plaintiff must prove the employer had knowledge of the plaintiff's disability when the adverse employment decision was made.  Brundage v. Hahn, 57 Cal.App.4th 228, 238 (2nd Dist. 1997).  Plaintiff acknowledges that reason expressed by Defendants in terminating Plaintiff was that Defendants believed Plaintiff lied about the reason for his unfitness for service.  Plaintiff contends, nonetheless, that the "because of" requirement is satisfied where there is a causal connection between the disability and the event or events that formed the factual circumstance of the adverse action, even if the connection is unknown at the time of the adverse action.  Thus, Plaintiff contends his absence was *caused by* the migraine headache, which was in turn caused by his childhood cancer.  Plaintiff contends that the adverse action was taken *because of* his claim that he was unfit for service, which was made *because of* the migraine.

Plaintiff's contentions are both factually unsupported and mis-focused.  First, the factual basis of Plaintiff's termination was not the absence per se, but the perception of a lie explaining the absence.  There is nothing to indicate Plaintiff would have been terminated for absence where the explanation for the absence would have been otherwise acceptable.  Second, Plaintiff's attempt to equate the "because of" requirement of section with "but for" causation is contrary to case law.  Where an adverse action is taken, courts look employer's motivation in taking the adverse action, not to the physical cause of the underlying facts.  See Brundage, 57 Cal.App.4th at 238 (adverse action is not discriminatory where employer did not

fire employee because employer thought employee's absence was caused by mental illness, but because employer thought employee's absence was not caused by mental illness).  Here, as in <u>Brundage</u>, Plaintiff was fired not because Defendants thought he had a migraine, but because they did not believe that the claim of a migraine was truthful.

Even if Plaintiff's contention regarding the *because of* requirement is correct and that requirement is met, Plaintiff's disability discrimination claim must still fail because Plaintiff cannot meet the shifting burden test under <u>McDonnell Douglas</u>.  Even if the court accepts that Plaintiff's contention that he was fired "because of" his migraine headache, Defendants have proffered a non-discriminatory reason for the adverse action – that plaintiff lied – and Plaintiff has not made a showing that the proffered non-discriminatory reason is pretextual.  Plaintiff admits that the reason given for his dismissal was Defendants' belief that Plaintiff had lied.  Plaintiff offers no facts at all to indicate that Defendants actually did believe Plaintiff's explanation that he had a migraine headache and  fired him specifically for that reason.

The court finds Plaintiff has failed to meed his burden of production or the burden of persuasion with respect to his claim of discrimination on the basis of disability.  Defendants' motion for summary judgment will therefore be granted with respect to Plaintiff's second claim for relief.

**III.  Failure to Engage in Interactive Process and Failure to Provide Reasonable Accommodation**

Plaintiff's third and fourth claims for relief allege failure to engage in an interactive process, and failure to provide reasonable accommodation, both in violation of section 12940.  Section 12940(n) provides that it shall be unlawful for an employer:

> . . . to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in *response to a request* for reasonable accommodation by an employee or applicant with a *known* physical or mental disability or known medical condition.

Section 12940, subdivision (n) (italics added).

The requirement that the plaintiff must request accommodation is a general rule that admits of exception "only when the employer '(1) knows that the employee has a disability, (2) knows, or has reason to know, that the employee is experiencing workplace problems because of the disability, and (3) knows, or has reason to know, that the disability prevents the employee from requesting a reasonable accommodation.' [Citation].  Brown v. Lucky Stores, Inc., 246 F.3d 1182, 1188 (9 Cir. 2001).  Plaintiff does not allege he requested accommodation at any time during his employment up to and including the time of his interviews with Lt. Garza and Chief Johnson immediately prior to his termination. Defendants allege, and Plaintiff does not dispute that Plaintiff had specifically denied any medical condition requiring accommodation on his application.  Plaintiff's affirmative denial of any need for accommodation, coupled with the absence of any indication that Plaintiff was prevented by the nature of his disability from requesting accommodation relieves Defendants of any duty to engage in the interactive process or provide accommodation during Plaintiff's employment.

Plaintiff contends that the duty to engage in the interactive process and to eventually provide reasonable accommodation attached at the time of that interview when Plaintiff explained that he was, in fact, suffering from a migraine at the time he called in unfit for duty. This contention is contrary to law.  The duty attaches when there is a request for accommodation.  Logically, that request for accommodation must be made during, or prior to, the plaintiff's employment.  There is no indication Plaintiff's requested accommodation or that his condition prevented him from requesting accommodation.  Plaintiff's contention that the duty to engage in the interactive process and provide reasonable accommodation attached at the time he informed Mooridian he had a migraine is just another way of arguing that Mooridian should have believed Plaintiff's story and not fired him.

Plaintiff's contention that a duty to engage in the interactive process attached at the time of the interviews that occurred immediately before his termination therefore fails for the

same reason Plaintiff's discrimination claim fails.  In both cases the claim requires a showing that Defendants had subjective knowledge of Plaintiff's disability or, at minimum, constructive knowledge.  Here, as discussed above, there is no basis for a finding of constructive knowledge, and Plaintiff has not adequately refuted Defendants' proffer of facts to show that when the adverse action was taken, Defendants held the subjective impression that Plaintiff was <u>not</u> disabled but was lying.  Thus, even at the time of his termination, Plaintiff cannot allege facts sufficient to show that Defendants had knowledge of his condition.

Because there was no knowledge, Defendants did not have a duty to engage in the interactive process or to offer accommodation.  Defendants are therefore entitled to summary judgment as to Plaintiffs third and fourth claims for relief.

THEREFORE, in consideration of the foregoing discussion, it is hereby ORDERED that Defendants' motion for summary judgment as to Plaintiff's first claim for relief for violation of Plaintiff's constitutionally protected liberty interest pursuant to 42 U.S.C., section 1983 is DENIED.  Defendants' motion for summary judgment as to Plaintiff's second, third, and fourth claims for relief for violation of California's Fair Employment and Housing Act is GRANTED.

IT IS SO ORDERED.

**Dated:    March 20, 2007**                  _____/s/ Anthony W. Ishii_____
0m8i78                                                UNITED STATES DISTRICT JUDGE

21