1
2
3
4
5
6
7
8
9
10

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| | |
|---|---|
| **BRANDON ELLIS,** ) | **CV F 05-1474 AWI SMS** |
| ) | |
| **Plaintiff,** ) | **PRETRIAL ORDER** |
| ) | |
| **v.** ) | **Motions In Limine Hearing:** |
| ) | **May 21, 2007** |
| **CITY OF REEDLEY; REEDLEY** ) | **8:30 a.m., Courtroom 2** |
| **POLICE DEPARTMENT; and DOES 1** ) | |
| **through 100, inclusive,** ) | **Trial:  May 31, 2007** |
| ) | **9:00 a.m., Courtroom 2** |
| **Defendants** ) | |
| _____ ) | **RULES OF CONDUCT** |

18

19      The pretrial conference was held on April 13, 2007.   The trial in this matter is set

20  for May 31, 2007.  The parties currently estimate that the trial shall take four to six days.

21  <u>I.  Jurisdiction and Venue</u>

22      This action was originally commenced in the Superior Court of California, County of

23  Fresno.  The action was removed by Defendants pursuant to 28 U.S.C. § 1331 and 1441.  Both

24  parties agree that jurisdiction and venue are proper in the above-captioned Court pursuant to 28

25  U.S.C. § 1331 and 1441.

26  <u>II.  Jury Trial</u>

27      Plaintiff and Defendants agree to a jury trial on all triable issues of fact.  Parties agree that

28  should the jury find liability on the part of Defendants, any determination on an award for

1  equitable relief, including injunctive relief will be made by the Court sitting without a jury.

2  III.  Facts

3        A.  Undisputed Facts

4  1.      The CITY OF REEDLEY is an incorporated city in the State of California, County of

5  Fresno and a governmental agency.

6  2.      Defendant, REEDLEY POLICE DEPARTMENT is a division of Defendant, CITY OF

7  REEDLEY.

8  3.      Plaintiff is an individual.

9  4.      The CITY OF REEDLEY employed ELLIS.

10  5.      ELLIS was employed in a probationary status as a police officer at the time of his

11  termination.

12  6.      Douglas Johnson was Chief of Police of REEDLEY POLICE DEPARTMENT at the time

13  of ELLIS' termination.

14  7.      Plaintiff was sworn in as a Reserve Police Officer for REEDLEY POLICE

15  DEPARTMENT ("DEPARTMENT") on May 1, 2003.

16  8.      ELLIS was moved from reserve status to a position as a probationary police officer on

17  December 15, 2003.

18  9.      As a probationary police officer, ELLIS was an "at-will" employee.

19  10.     Probationary officers were eligible for retention as permanent employees after the

20  successful completion of their probationary period.

21  11.     ELLIS was terminated from employment with the REELEY POLICE DEPARTMENT on

22  October 11, 2004.

23  12.     On October 9, 2004, the CITY OF REEDLEY held an annual community event known as

24  "Fiesta" that consisted of a parade and other civic activities.

25  13.     ELLIS had worked the shift from 4 pm on October 8, 2004, to 2 am on October 9, 2004.

26  14.     ELLIS worked a Fiesta-related shift from 7 am to approximately 1 pm on October 9,

27

28                                              2

2004.

15.     ELLIS was scheduled to work another shift on October 9, 2004 from 4 pm that same day until 2 am the next day.

16.     ELLIS went with Officer Preston Ballinger to Officer Ballinger's in-laws house following his Fiesta-related shift on October 9, 2004 .

17.     The REEDLEY POLICE DEPARTMENT has a "Fitness for Duty" policy that states that "any employee who feels unable to perform their duty shall promptly notify a supervisor."

18.     Sometime before 4:00 p.m. on October 9, 2004, Plaintiff contacted the REEDLEY POLICE DEPARTMENT to report that he would not be reporting for his scheduled shift from 4:00 p.m. to 2:00 a.m. that day.

19.     On October 9, 2004, following Plaintiff's communication to the REEDLEY POLICE DEPARTMENT that he would not be reporting for his scheduled shift, Plaintiff was contacted by Sergeant Christine Mooridian (Ediger).

20.     Plaintiff met with Lieutenant Garza on October 11, 2004 at the REEDLEY POLICE DEPARTMENT.

21.      Plaintiff met with Chief Johnson on October 11, 2004 at the REEDLEY POLICE DEPARTMENT.

22.     ELLIS was terminated on October 11, 2004.

        B.  Disputed Facts

                **1.     Plaintiff's Disputed Facts**

1.      Whether Lieutenant Steven Wright of the Department told James Garcia of Table Mountain Tribal Police during a background investigation on ELLIS in the Fall of 2004 that ELLIS had been terminated for integrity issues.

2.      Whether ELLIS was honest in claiming that he had a migraine when he called in sick on October 9, 2004.

3.      Whether ELLIS was stigmatized as dishonest or immoral in connection with his

termination.

4.      Whether Chief Johnson told Sergeants of the REEDLEY POLICE DEPARTMENT in connection with ELLIS' termination that he had been contacted concerning ELLIS' purported involvement with narcotics.

5.      Whether ELLIS was provided with due process to contest the Department's claim that he was being terminated in connection with a claim that he was dishonest or immoral.

6.      Whether the DEPARTMENT's decision to terminate ELLIS for dishonesty without investigating the truth of his claim that he had called in sick because of a migraine was arbitrary or capricious.

7.      Whether the DEPARTMENT's ELLIS was given adequate notice of its intent to terminate him for dishonest or immorality and/or the opportunity to meaningfully debate such charges.

8.      Whether other police departments have been told by members of the DEPARTMENT that ELLIS was terminated for integrity issues.

9.      The extent to which ELLIS' reputation in the peace officer community has been injured because of this termination from the DEPARTMENT for honesty and integrity issues.

10.     The extent to which the stigmatization of ELLIS as dishonest or immoral without due process in connection with his termination without due process has caused ELLIS pecuniary damages.

11.     The extent to which the stigmatization of ELLIS as dishonest or immoral without due process in connection with his termination has caused ELLIS to incur emotional distress.

12.     Whether ELLIS' performance prior to his termination was satisfactory.

13.     Whether ELLIS was terminated for integrity issues.

14.     Whether ELLIS reputation has been damaged.

15.     Whether the conduct relied upon by the DEPARTMENT to terminate ELLIS' employment demonstrated dishonesty.

16.     Whether ELLIS has suffered any financial or other damages resulting from the

4

termination and/or the proffered basis for his termination and/or the failure to provide him due process with respect to the termination.

17.     Whether ELLIS has been foreclosed from any future employment as a police officer as a result of the termination and/or the proffered basis for his termination and/or the failure to provide him due process with respect to the termination.

18.     Whether ELLIS suffered migraine headaches as a result of his prior cancer or treatment of cancer.

19.     Whether ELLIS went to Ballinger's in-law's house to obtain pain reliever, rest and liquids or to attend the birthday party of Ballinger's infant child.

20.     Whether ELLIS was truthful when he called in sick on October 9, 2004.

## 2.     Defendants' Disputed Facts

1.     Whether Plaintiff was "sick" within the meaning of the REEDLEY POLICE DEPARTMENT's Personnel Rules Polices and Procedures.

2.     Whether Plaintiff was "sick" within the meaning of the Memorandum of Understanding for the Law Enforcement Unit.

3.     Whether Plaintiff violated REEDLEY POLICE DEPARTMENT's policy on sick leave reporting.

4.     Whether Plaintiff violated the REEDLEY POLICE DEPARTMENT's policy on absences.

5.     Whether Plaintiff misused "sick leave" under the REEDLEY POLICE DEPARTMENT's Personnel Rules Polices and Procedures

6.     Whether Plaintiff misused "sick leave" under the Memorandum of Understanding for the Law Enforcement Unit.

7.     Whether Plaintiff was dishonest in reporting "sick" for duty on October 9, 2004.

8.     Whether Plaintiff violated the Law Enforcement Code of Ethics as set forth by the REEDLEY POLICE DEPARTMENT.

9.     Whether Plaintiff was provided adequate notice of an opportunity to be heard on the

reasons for his termination.

10.     Whether Plaintiff was provided a meaningful opportunity to be heard pertaining to the reasons for his termination.

11.     Whether Plaintiff had a right to a name-clearing hearing.

12.     Whether the REEDLEY POLICE DEPARTMENT "published" any disparaging remarks regarding Plaintiff in connection with his termination such that Plaintiff had a right to any name-clearing hearing.

13.     Whether the REEDELY POLICE DEPARTMENT was immune from liability for disclosing the reasons for Plaintiff's termination to any other third party.

14.     Whether the REEDELY POLICE DEPARTMENT was privileged to disclose the reasons for Plaintiff's termination to any other third party.

15.     Whether Plaintiff suffered any monetary "loss" for any alleged failure to provide him a name-clearing hearing.

16.     Whether Plaintiff lost any employment opportunities for any alleged deprivation of his liberty interest.

17.     Whether the reasons for Plaintiff's termination were true.

18.     Whether Plaintiff's cause of action is barred by the doctrine of equitable estoppel.

C.  Disputed Evidentiary Issues

**1.      Plaintiff's Disputed Evidentiary Evidence**

1.     Testimony of Dr. Pamela Lammers - Dr. Lammers was one of ELLIS treating physicians and was designated as an expert witness because of that relationship. Dr. Lammers currently resided in San Diego County.  Her deposition was taken and Plaintiff proposes to use her deposition in lieu of her live testimony.

2.     Documents maintained in ELLIS' personnel file in violation of the procedures for review and response as required by POBR, Government Code section 3300 et. seq. - Defendants may attempt to point to alleged performance deficiencies purportedly discovered after ELLIS'

termination.  POBR prohibits the placement of adverse comments in a police officer's personnel file without being shown the adverse comment and being given an opportunity to respond. Government Code section 2205, 3306.

3.      Alleged performance deficiencies discovered after termination - Plaintiff will request an in limine instruction precluding the introduction of evidence of purported performance deficiencies allegedly discovered after ELLIS' termination. Such alleged performance deficiencies are not germane to the question of whether (a) ELLIS was entitled to due process with respect to his termination in connection with claims of immorality and dishonesty or (b) whether ELLIS was accorded such due process.

4.      Correspondence in contemplation of settlement - Plaintiff will move in limine to preclude the introduction or correspondence regarding potential settlement.

5.      Documents not produced in Defendant's Rule 26 Exchange - Plaintiff will object to such documents to the extent that such documents were in Defendant's possession and were integral to their defense.

6.      Documents not produced in Defendant's discovery - Plaintiff will object to such documents to the extent that such documents were in Defendant's possession and were responsive to a request for document.

## 2.      **Defendants' Disputed Evidentiary Evidence**

Defendants will be filing motions in limine, including motions related to the following general areas:

1.      No evidence or reference to Plaintiff's migraine headaches or any headaches having any connection to Plaintiff's prior history of adolescent cancer or cancer treatment.

2.      No evidence or reference to Plaintiff having had a prior history of adolescent cancer and cancer treatment.

3.      No evidence of Defendants' financial condition and/or net worth.

4.      Exclusion and preclusion of Plaintiff's witnesses who were not timely disclosed and for

whom Plaintiff did not timely provide addresses and telephone numbers pursuant to initial disclosures or Defendants' request.

5.      No reference to Defendants' motion for summary judgment and/or summary adjudication, any supporting pleadings, and/or the Court's grant and/or denial of the same.

6.      Exclusion of character testimony on the Plaintiff's propensity for honesty or truth-telling.

7.      Exclusion of opinion testimony, whether lay or expert, on Plaintiff's propensity for honesty or truth-telling.

8.      All testimony concerning Plaintiff's opinion of his work performance.

9.      To exclude documents that were not produced during discovery.

10.     Exclusion of evidence of any other lawsuits, actions, and/or complaints against Defendants for any cause of action.

11.     No reference to dismissed claims or claims summarily adjudicated, including but not limited to Plaintiff's claim of disability discrimination, failure to provide reasonable accommodation, and failure to engage in the interactive process.

12.     To exclude lay witnesses from the courtroom during trial.

13.     To exclude evidence of conclusory, hearsay, speculation, and lack of foundation testimony.

14.     Exclude evidence of any other causes of actions or claims not stated in the First Amended Complaint.

15.     Exclude evidence of any other causes of actions or claims otherwise barred by the statute of limitations.

16.     Exclude evidence of any other causes of actions or claims not filed in conformance with California Government Code section 900 et. seq.

17.     All deposition testimony from witnesses not appearing at trial.

18.     All testimony from non-supervisory employees concerning Plaintiff's qualifications/job performance.

8

19.     Exclusion of all documents not timely produced pursuant to Plaintiff's initial disclosures and/or a request from Defendant, or otherwise not produced in conformance with Federal Rules of Civil Procedure, Rule 26.

IV.  Relief Sought

ELLIS seeks the recovery of financial losses that resulted from being deprived of other employment opportunities as a police officer by being stigmatized as immoral or dishonest without due process of law.  ELLIS' expert accounting witnesses have provided a report that estimates that such damages are in the range of  $80,000 to $160,000.

Further, ELLIS seeks the recovery of damages for emotional distress arising from the deprivation of his constitutional right to due process.  Such emotional distress damages are left to the determination of the jury.

ELLIS also seeks such other and further relief as the court deems proper which may include an order requiring that ELLIS be provided with due process so as to allow him to effectively rebut the charges of immorality and dishonesty that were made in connection with his termination.

V.  Points of Law

**A.  Undisputed Points of Law**

1.     Venue is proper.

2.     Federal substantive and procedural law applies to Plaintiff's claim for deprivation of a liberty interest without due process of law under 42 U.S.C. § 1983 et. seq.

**B.  Plaintiffs' Contentions**

Workers possess a "liberty interest to engage in any of the common occupations of life," which is protected by the Fourteenth Amendment from deprivation without due process of law. . Campanelli v. Bockrath, 100 F. 3d 1476, 1478 (9th Cir. 1996).  This liberty interest is implicated where a state actor, in declining to rehire or continue employment, makes any charges against the employee "that might seriously damage his standing and associations in his community." Board

of Regents v. Roth, 408 U.S. 564, 569 (1972).  "For 'were a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Id.   In the context of termination of employment, the Ninth Circuit has determined that a former employee's liberty interest is implicated where the state employee made charges that impair a reputation for honesty and morality and where "(1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge, and (3) the charge is made in connection with termination of employment. Matthews v. Harney County, 819 F.2d 889, 892 (9th Cir. 1987).

The fundamental requirement of due process was the opportunity to be heard at a meaningful time and in a meaningful manner. Mathews, 424 U.S. at 333; Orloff, 708 F.2d at 379; Vanelli, 667 F.2d at 779-80.  The minimum process due for deprivation of a liberty interest involving stigmatization during termination of employment was a hearing where the employee has an opportunity to clear his name. Brady v. Gebbie, 859 F.2d 1543, 1556 (9th Cir. 1988).

Publication includes placing stigmatizing memos into a police officer's personnel file when there is a statute requiring that such personnel files be made available in any background investigation for employment with other police agencies. Compare Cox v. Roskelley, 359 F.3d 1105, 1110 (9th Cir. 2004) and Cal. Gov't Code section 1031(d); County of Riverside v. Superior Court, 27 Cal. 4th 793, 799 (Cal. 2002)

42 U.S.C. section 1983 provides in relevant part:

"Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress…."

In order to hold a local government liable under section 1983, the Supreme Court has interpreted this causation element to require that the harm be the result of action on the part of the government entity that implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers, or the result of the entity's

10

custom.  Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 690-691, (1978).

A local government is said to have an unconstitutional policy when it fails to train its employees, and the failure to train amounts to deliberate indifference to an obvious need for such training, and the failure train will likely result in the employee making a wrong decision.  City of Canton v. Harris, 489 U.S. 378 (1989); Gold v. City of Miami, 1998 WL 54803 (11th Cir. 1998); Sewell v. Town of Lake Hamilton, 117 F.3d 488 (11th. Cir. 1997).  An unconstitutional policy may also exist if an isolated action of a government employee is dictated by a "final policymaker," (Pembaur v. City of Cincinnati, 475 U.S. 469 (1986); Bryan County v. Brown, 520 U.S. 397 .  Who is a "final policymaker" is decided by reference to state law.  Pembaur, at 483; McMillan v. Monroe County, 520 U.S. 781 (1997))  or if the authorized policymaker approves a subordinate's decision and the basis for it. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

With respect to the extent of damages available, the Supreme Court has noted that the basic purpose of a section 1983 damages award is to compensate the victims of official misconduct, and therefore held that there is no limit on actual damages if they can be proven.  Carey v. Piphus, 435 U.S. 247 (1978).  The legislative history of § 1983 was intended to "[create] a species of tort liability" in favor of persons who are deprived of "rights, privileges, or immunities secured" to them by the Constitution. Imbler v. Pachtman, 424 U.S. 409, 417 (1976). Carey v. Piphus, 435 U.S. 247, 253 (U.S. 1978)

The purpose of awarding damages in a section 1983 case is to compensate the aggrieved party. Carey, 435 U.S. at 254-55. The compensable damages are those actually caused by the denial of procedural due process. Chalmers v. City of Los Angeles, 762 F.2d 753, 761 (9th Cir. 1985). These can include damages for mental and emotional distress. Vanelli v. Reynolds School Dist., 667 F.2d 773, 781 (9th Cir. 1982); Brady v. Gebbie, 859 F.2d 1543, 1557 (9th Cir. 1988)

C.     **Defendants' Disputed Legal Issues**

1.     Whether Plaintiff was entitled to a name-clearing hearing under 42 U.S.C. § 1983 et. seq.

2.     Whether Plaintiff was deprived of a liberty interest without due process of law.

3.     Whether Defendants were immune from liability.

4.     Whether Defendants were privileged to make any alleged disclosures.

5.     Whether Plaintiff is barred by the doctrine of equitable estoppel.

6.     Whether Plaintiff suffered any damage for any alleged failure to provide him a name-clearing hearing that was due.

7.     Whether Plaintiff is entitled to an award of any compensatory damages beyond nominal damages.

8.     Whether Plaintiff is entitled to an award of attorney's fees.

9.     Whether Plaintiff is entitled to costs of suit.

10.    Whether Plaintiff is entitled to injunctive relief.

VI.  Abandoned Issues

There are no abandoned issues.  However, Plaintiff's causes of action for disability discrimination, failure to provide a reasonable accommodation and failure to engage in the interactive process have been summarily adjudicated and are no longer at issue.

VII.  Witnesses

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

A.  Plaintiffs' Witnesses

**1.     Plaintiff's Expert Witnesses**

1.     Dr. Pamela Lammers, 9300 Valley Children's Place, Madera, California.

2.      George Tamberi, CPA, 7650 North Palm, Suite 105, Fresno, California 93711.

3.      Mike McGee, c/o Peter Sean Bradley, 1171 West Shaw, Suite 102, Fresno, California 93711; (559) 221-2100.

## 2.      Plaintiff's Other Witnesses

1.      Brandon Ellis, c/o Peter Sean Bradley, 1171 West Shaw, Suite 102, Fresno, California 93711; (559) 221-2100.

2.      James Garcia, 620 Roosevelt, Kingsburg, California.

3.      Lt. Jose Garza, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

4.      Lt. Steven Wright, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

5.      Chief Douglas N. Johnson, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

6.      Officer Preston Ballinger, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

7.      Sergeant Christy Mooradian, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

8.      Officer Jacob Rios, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

9.      Officer Mark Diedrich, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

10.     Officer Zak Hild, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

11.     Officer Robert Macedo, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

12.     Officer Clinton Horne, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno,

13

Ca 93720; (559) 256-7800.

13.   Officer Richard Badilla, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno,

Ca 93720; (559) 256-7800.

     B.  Defendants' Witnesses

        **1.**   **Defendants' Expert Witnesses**

1.   Dr. Stephen B. Shohet, M.D.; 1925 Gough Street #42, San Francisco, CA 94109.

        **2.**   **Defendants' Other Witnesses**

1.   Lieutenant Steven Wright, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302,

Fresno, Ca 93720; (559) 256-7800.

2.   Chief Douglas Johnson, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno,

Ca 93720; (559) 256-7800.

3.   Lieutenant Jose Luis Garza, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302,

Fresno, Ca 93720; (559) 256-7800.

4.   Sergeant Issac Almanzar, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno,

Ca 93720; (559) 256-7800.

5.   Sergeant David Omstead, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno,

Ca 93720; (559) 256-7800.

6.   Hector Aleman, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca

93720; (559) 256-7800.

7.   Preston Ballinger, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca

93720; (559) 256-7800.

8.   Ray Camacho, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720;

(559) 256-7800.

9.   Johnathon Cates, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca

93720; (559) 256-7800.

10.   Mark Diedrich, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca

14

93720; (559) 256-7800.

11.     Marc Ediger, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

12.     Tricia Hicks, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

13.     Zachard Hild, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

14.     Clinton Horne, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

15.     Todd Lowery, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

16.     Robert Macedo, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

17.     Sean Provost, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

18.     Juan Saenz, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

19.     Terry Schneider, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

20.     Brian Scott,  5016 Lark Ave, Visalia, Ca (559) 732-2082.

21.     Robert Sherrow, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

22.     Jeffery Wheeler, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

23.     Kay Pierce, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

24.    Laura Gabaldon, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

25.    Debbie Gomez, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

26.    Kimberly Martinez, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

27.    Janie Ortiz, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

28.    Megan Yarbough, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

29.    Darlene Friend, Visalia Police Department, 303 S. Johnson, Visalia, Ca 93291; (559) 713-4257.

30.    Richard Badilla, San Diego Police Department, 1401 Broadway, San Diego, Ca 92101; (619) 531-2000.

31.    Dave Dechow, Clovis Police Department, 1233 Fifth Street, Clovis, Ca  93612; (559) 324-8200.

32.    John Gomez, Fresno Police Department, 2323 Mariposa Mall, Fresno, Ca 93721; (559) 621-2000.

33.     Christie Mooridian, c/o Liebert Cassidy Whitmore, 575 E. Locust, Suite 302, Fresno, Ca 93720; (559) 256-7800.

34.    Brent Navarro, Fresno Police Department, 2323 Mariposa Mall, Fresno, Ca 93721; (559) 621-2000.

35.    Jacob Rios, Fresno Police Department, 2323 Mariposa Mall, Fresno, Ca 93721; (559) 621-2000.

36.    Adriana Gonzales, Fresno Police Department, 2323 Mariposa Mall, Fresno, Ca 93721; (559) 621-2000.

37.     Custodian of Records, Sanger Police Department, 1700 Seventh Street, Sanger, Ca 93657; (559) 875-8521.

38.     James Garcia, 620 Roosevelt, Kingsburg, Ca; (559) 987-7794.

39.     Custodian of Records, Table Mountain Tribal Police Department, 8184 Table Mountain Road, Friant, Ca 93626; (559) 822-7777.

40.     Brandon Ellis, c/o Penner, Bradley & Buettner, 1171 W. Shaw Ave. Ste. 102, Fresno, Ca. 93711 (559) 221-2100.

Defendants reserve the right to call any other witnesses for the purposes of impeachment at the time of trial.

## VIII.  Exhibits

The following is a list of documents or other exhibits that the parties expect to offer at trial.  NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

### A.  Plaintiff and Defendants' Joint Exhibits

1.      No Longer Interest Notification Form; Bates No. RE000001.

2.      Notice of Appointment/Termination - Termination; Bates No. RE000002.

3.      Personnel Action Form - Separation; Bates No. RE000003.

4.      Memo/Letter - termination of employment due to failure to meet minimum qualifications; Bates No. RE000004.

5.      Memo re ELLIS sick call; Bates Nos RE000005-RE000006.

6.      Complaint history: Sick Call report; Bates No. RE000007.

7.      Employee Quarterly Performance Evaluation for Sept/Oct 2004; Bates Nos. RE000008-RE000010.

8.      EDD Notice of Unemployment Eligibility; Bates Nos. RE000011-RE000013.

9.      DFEH Notice of Complaint and Request to File Suit, Bates Nos. RE000014.

10.     DFEH Notice of Case Closure, Bates Nos. RE000015-RE000016.

11.     DFEH Complaint, Bates Nos. RE000017-RE000020.

12.     Copy of DFEH Complaint, Bates Nos. RE000021-RE000024.

13.     Authorization for Release form; Bates No. RE000025.

14.     Notice of Wages Used for Unemployment Insurance Claim; Bates No. RE000026.

15.     Memo re meeting with Brandon ELLIS, prepared by Joe Garza for Chief Johnson; Bates No. RE000027.

16.     Memo re Incident regarding Brandon ELLIS, prepared by Joe Garza for Chief Johnson; Bates No. RE000028.

17.     Vehicle Report; Bates No. RE000029.

18.     Draft Crime Report Narrative, prepared by Officer Brian Scott; Bates Nos. RE000030-RE000031.

19.     Employee Quarterly Performance Evaluation Report; Bates Nos. RE000032-RE000033.

20.     Employee Quarterly Performance Evaluation Report; Bates Nos. RE000034-RE000035.

21.     Employee Quarterly Performance Evaluation Report; Bates Nos. RE000036-RE000037.

22.     Employee Quarterly Performance Evaluation Report; Bates Nos. RE000038-RE000039.

23.     Employee Quarterly Performance Evaluation Report; Bates Nos. RE000040-RE000041.

24.     Employee Quarterly Performance Evaluation Report; Bates Nos. RE000042-RE000043.

25.     Employee Quarterly Performance Evaluation Report; Bates Nos. RE000044-RE000045.

26.     Employee Quarterly Performance Evaluation Report; Bates Nos. RE000046-RE000047.

27.     Shift Expectations - Swing Shift 2003; Bates Nos. RE000048-RE000049.

28.     Letter requesting uniforms; Bates No. RE000050.

29.     Letter requesting uniforms; Bates No. RE000051.

30.     Equipment issue form; Bates Nos. RE000052-RE000053.

31.     Personnel Incident Report; Bates No. RE000054.

32.     Personnel Incident Report; Bates No. RE000055.

33.     Court Subpoena File; Bates No. RE000056.

34.     Personnel Incident Report; Bates No. RE000057.

35.     Vehicle Inspection and Inventory; Bates No. RE000058.

36.     Comprehensive Report: Brandon ELLIS; Bates No. RE000059-RE000060.

37.     Finance Dept Memo (Redacted - Privacy Privilege); Bates No. RE000061.

38.     Notice of Psychological Evaluation; Bates No. RE000062.

39.     Notice of Follow-up Psychological Evaluation; Ba1tes No. RE000063.

40.     Notice of Pre-Employment Psychological Evaluation; Bates No. RE000064.

41.     Memo re Manual Addendum; Bates No. RE000065.

42.     Oath of Office; Bates No. RE000066.

43.     Personnel Action Form; Bates No. RE000067.

44.     Notice of Appointment/Termination: Appointment; Bates No. RE000068.

45.     Notice of Appointment/Termination: Appointment; Bates No. RE000069.

46.     Notice of Pre-Employment Psychological Evaluation; Bates No. RE000070.

47.     Memo re: Background Investigation; Bates Nos. RE000071-RE000081.

48.     Notice of Passing Polygraph; Bates No. RE000082.

49.     Request for Live Scan Service; Bates No. RE000083.

50.     Faxed authorization and request for information sent to Clovis police department; Bates Nos. RE000084-RE000086.

51.     Notice of records found from Clovis police department with copy of authorization and request for information; Bates Nos. RE000087-RE000089.

52.     Faxed request for information sent to Fresno police department; Bates No. RE000090.

53.     Credit report; Bates Nos. RE000091-RE000095.

54.     Fax cover sheet: Fresno police department; Bates No. RE000096.

55.     Letter requesting information : Fresno Police Department; Bates No. RE000097.

56.     Fax confirmation; Bates No. RE000098.

57.     Fax cover sheet; Bates No. RE000099.

58.     Letter requesting information : Clovis Police Department; Bates No. RE000100.

59.     Fax confirmation; Bates No. RE000101.

60.     Copies of requests for records Fresno Police Department; Bates Nos. RE000102-RE000107.

61.     Notice of no criminal records - Fresno Police Department; Bates No. RE000108.

62.     Certificates; Bates Nos. RE000109-RE000110.

63.     DOJ clearance; Bates Nos. RE000111-RE000112.

64.     Fingerprint submission form; Bates Nos. RE000113-RE000114.

65.     Notice to consumer re: financial information; Bates No. RE000115.

66.     Polygraph waiver; Bates No. RE000116.

67.     Polygraph test result; Bates Nos. RE000117-RE000121.

68.     Driver's License; Bates No. RE000122.

69.     Social Security Card; Bates No. RE000123.

70.     DMV records report; Bates No. RE000124.

71.     Insurance information; Bates No. RE000125.

72.     Birth Certificate; Bates No. RE000126.

73.     Voter Registration Card; Bates No. RE000127.

74.     High School Diploma; Bates No. RE000128.

75.     Community College transcripts; Bates Nos. RE000129-RE000130.

76.     High School Transcripts; Bates No. RE000131.

77.     Notice to Applicant re: background information; Bates Nos. RE000132-RE000135.

78.     Personal History Statement form; Bates Nos. RE000136-RE000151.

79.     Polygraph Questionnaire; Bates Nos. RE000152-RE000166.

80.     Background Investigation Checklist; Bates No. RE000167.

81.     Tape contents; Bates No. RE000168.

82.     Memo re Background Investigation Confidential Medical Information; Bates No. RE000169.

83.     Dr Mitchell F. Jelen, M.D. report; Bates Nos. RE000170-RE000174.

84.     Medical History Statement; Bates Nos. RE000175-RE000178.

85.     Letter of support re Psychological evaluation, report prepared by Gregory Cherney, Ph.D. and Brian Sciaroni Ph.D.; Bates Nos. RE000179-RE000180.

86.     Memo re: pre employment evaluation, prepared by Brian Sciaroni Ph.D. and David Rose Ph.D.; Bates Nos. RE000181-RE000182.

87.     Field Training Program Completion Record; Bates No. RE0000185.

88.     Memo re Reserve Officer Brandon ELLIS, prepared by Marc Ediger; Bates No. RE000186.

89.     Memo re Reserve Officer Brandon ELLIS, prepared by Marc Ediger; Bates No. RE000187.

90.     Field Training Observation Record -Provost; Bates Nos. RE000188-RE000189.

91.     Field Training Observation Record -Provost; Bates Nos. RE000190-RE000191.

92.     Field Training Observation Record -Provost; Bates Nos. RE000192-RE000193.

93.     Field Training Observation Record -Provost; Bates Nos. RE000194-RE000195.

94.     Field Training Observation Record -Provost; Bates Nos. RE000196-RE000197.

95.     Field Training Observation Record -Provost; Bates Nos. RE000198-RE000199.

96.     Field Training Observation Record -Provost; Bates Nos. RE000200-RE000201.

97.     Field Training Observation Record -Provost; Bates Nos. RE000202-RE000203.

98.     Field Training Observation Record -Provost; Bates Nos. RE000204-RE000205.

99.     Field Training Observation Record -Provost; Bates Nos. RE000206-RE000207.

100.    Field Training Observation Record -Provost; Bates Nos. RE000208-RE000209.

101.    Field Training Observation Record -Provost; Bates Nos. RE000210-RE000211.

102.    Field Training Observation Record -Provost; Bates Nos. RE000212-RE000213.

103.    Field Training Observation Record -Almanzar; Bates Nos. RE000214-RE000215.

104.    Field Training Observation Record -Almanzar; Bates Nos. RE000216-RE000217.

105.    Field Training Observation Record -Almanzar; Bates Nos. RE000218-RE000219.

106.    Field Training Observation Record -Almanzar; Bates Nos. RE000220-RE000221.

107.    Field Training Observation Record -Almanzar; Bates Nos. RE000222-RE000223.

108.    Field Training Observation Record -Almanzar; Bates Nos. RE000224-RE000225.

109.    Field Training Observation Record -Almanzar; Bates Nos. RE000226-RE000227.

110.    Field Training Observation Record -Almanzar; Bates Nos. RE000228-RE000229.

111.    Field Training Observation Record -Almanzar; Bates nos. RE000230-RE000231.

112.    Field Training Observation Record -Almanzar; Bates Nos. RE000232-RE000233.

113.    Field Training Observation Record -Scott; Bates Nos. RE000234-RE000235.

114.    Field Training Observation Record -Scott; Bates Nos. RE000236-RE000237.

115.    Field Training Observation Record -Scott; Bates Nos. RE000238-RE000239.

116.    Field Training Observation Record -Scott; Bates Nos. RE000240-RE000241.

117.    Field Training Observation Record -Scott; Bates Nos. RE000242-RE000243.

118.    Field Training Observation Record -Scott; Bates Nos. RE000244-RE000245.

119.    Field Training Observation Record -Scott; Bates Nos. RE000246-RE000247.

120.    Field Training Observation Record -Scott; Bates Nos. RE000248-RE000249.

121.    Field Training Observation Record -Scott; Bates Nos. RE000250-RE000251.

122.    Field Training Observation Record -Scott; Bates Nos. RE000252-RE000253.

123.    Field Training Observation Record -Scott; Bates Nos. RE000254-RE000255.

124.    Field Training Observation Record -Scott; Bates Nos. RE000256-RE000257.

125.    Field Training Observation Record -Scott; Bates Nos. RE000258-RE000259.

126.    Field Training Observation Record -Provost; Bates Nos. RE000260-RE000261.

127.    Field Training Observation Record -Provost; Bates Nos. RE000262-RE000263.

128.   Field Training Observation Record -Provost; Bates Nos. RE000264-RE000265.

129.   Field Training Observation Record -Provost; Bates Nos. RE000266-RE000267.

130.   Field Training Observation Record -Provost; Bates Nos. RE000268-RE000269.

131.   Field Training Observation Record -Provost; Bates Nos. RE000270-RE000271.

132.   Field Training Observation Record -Provost; Bates Nos. RE000272-RE000273.

133.   Field Training Observation Record -Provost; Bates Nos. RE000274-RE000275.

134.   Field Training Observation Record -Scott; Bates No. RE000276.

135.   Monthly Observation Record -Scott; Bates Nos. RE000277-RE000281.

136.   Field Training Observation Record -Provost; Bates Nos. RE000282.

137.   Monthly Observation Record - Provost; Bates Nos. RE000283-RE000287.

138.   Copy of Dispatch Call from Brandon ELLIS; Bates No. RE000371.

139.   Plaintiff's pay stubs from Table Mountain Tribal Police Department.

140.   Plaintiff's pay stubs from REEDLEY POLICE DEPARTMENT.

141.   Plaintiff's W-2 for 2004 for Table Mountain Tribal Police Department.

142.   Plaintiff's W-2 for 2004 from REEDLEY POLICE DEPARTMENT.

143.   Plaintiff's California Public Employee's Retirement System statements for July 1, 2003 through June 30, 2004.

144.   Plaintiff's California Public Employee's Retirement System statements for July 1, 2004 through June 30, 2005.

145.   Statements from Employment Development Department for 11-06-04 and 12-11-04.

146.   Letter from Sergeant Almanzar to Whom It May Concern dated October 27, 2004.

147.   Letter from Richard Badilla.

148.   Letter from Preston Ballinger to Whom It May Concern.

149.   Letter from Robert Macedo to Whom It May Concern.

150.   Letter from Jacob Rios.

151.   Statement of Preston Ballinger dated November 14, 2004.

B.  Plaintiffs' Exhibits

1.        October 20, 2004 Dr. Pamela Lammers letter.

2.        Pay Stub for check 54879.

3.        Pay Stub for check 55221.

4.        Documents from Valley Children's Hospital (Exhibit "A" to Rule 26 Exchange pp. 1 through 237.

5.        Notice of Termination (Defendant' Rule 26 Disclosure p. 1.

6.        Reedley Personnel Manual, Fitness for Duty Policy.

7.        Reedley Personnel Manual, Policies Re: Termination.

8.        Bradley Letter 12/9/04.

9.        Boranian Letter 12/21/04.

10.      Boranian Letter 1/12/05.

11.      Bradley Letter 1/19/05.

12.      Boranian Letter 2/29/05.

13.      Boranian Letter 3/4/05.

14.      All correspondence related to Putative Groeneveld letter re "name clearing".

15.      9/28/05 Letter from Clovis.

16.      4/12/06 Letter from CSUF.

17.      Photos

18.      Satellite Photos.

19.      Check No. 159 (Exhibit No. 1 to the Deposition of Mike McGee).

20.      Subpoena (Exhibit No. 2 to the Deposition of Mike McGee).

21.      Exhibit "B" (Exhibit No. 3 to the Deposition of Mike McGee).

22.      File of Mike McGee (Exhibit No. 4 to the Deposition of Mike McGee).

23.      Memorandum by James Garcia (Exhibit No. 3 to the Deposition of James Garcia).

24.      Letter to Mr. Bradley from James Garcia (Exhibit No. 4 to the Deposition of James

Garcia).

25.     All Defendant's Initial Disclosure (Exhibit No. 1 to the Deposition of Jose Luis Garza).

26.     Preston Ballinger's November 14, 2004 letter (Exhibit No. 2 to the Deposition of Jose Luis Garza).

27.     Check No. 159 (Exhibit No. 1 to the Deposition of George Tamberi).

28.     Exhibit "A", "B" & "C" (Exhibit No. 2 to the Deposition of George Tamberi).

29.     Subpoena (Exhibit No. 3 to the Deposition of George Tamberi).

30.     File of George Tamberi (Exhibit No. 4 to the Deposition of George Tamberi).

31.Curriculum Vitae of Pamela Lammers, M.D. (Exhibit No. 1 to the Deposition of Pamela Lammers, M.D.).

32.     Subpoena re Deposition (Exhibit No. 2 to the Deposition of Pamela Lammers, M.D.).

33.     Valley Children's Discharge Summary 11/12/94 (Exhibit No. 3 to the Deposition of Pamela Lammers, M.D.).

34.     9/17/96 Lammers letter to Jones (Exhibit No. 4 to the Deposition of Pamela Lammers, M.D.).

35.     2/13/98 CCS Center Conference Report (Exhibit No. 5 to the Deposition of Pamela Lammers, M.D.).

36.     2/9/99 Oncology/Hematology Physician Progress Note (Exhibit No. 6 to the Deposition of Pamela Lammers, M.D.).

37.     Handwritten CCS Center Conference Report (Exhibit No. 7 to the Deposition of Pamela Lammers, M.D.).

38.     10/20/04 Lammers Letter to Whom It May Concern (Exhibit No. 8 to the Deposition of Pamela Lammers, M.D.).

39.     Various Letters (Exhibit No. 3 to the Deposition of Brandon Ellis, Volume Two.)

40.     Personnel Policies and Procedures of City of Reedley (Bates Stamped 374-428).

41.     Reedley Police Department Mission Statement  (Bates Stamped 429).

42.    Reedley Police Department Manual  (Bates Stamped 430-801).

43.    Fitness for Duty Policy  (Bates Stamped 348, 774-775).

44.    Peace Officer Personnel Files  (Bates Stamped 766-770).

45.    Disciplinary Policy  (Bates Stamped 549-556).

46.    Memorandum of Understanding  (Bates Stamped 803-837).

47.    Master Salary Index  (Bates Stamped 838-845).

48.    Sick Leave  (Bates Stamped 859).

49.    Penal Codes  (Bates Stamped 862-890).

50.    Reedley Resolution and Pay Scales  (Bates Stamped 891-898).

51.    Map

C.  Defendants' Exhibits

1.    CITY OF REEDLEY, Personnel Policies and Procedures; Bates Nos. RE000371-RE000427.

2.    Law Enforcement Code of Ethics; Bates No. RE000428.

3.    REEDLEY POLICE DEPARTMENT Mission Statement; Bates No. RE000429.

4.    REEDLEY POLICE DEPARTMENT Procedure Handbook; Bates Nos. RE000430-RE000801.

5.    CITY OF REEDLEY Memorandum of Understanding, Law Enforcement Unit; Bates Nos. RE000802-RE000898.

6.    Memorandum from James Garcia to the Law Offices of Peter Bradley regarding BRANDON ELLIS.

7.    Letter from James Garcia to the Law Office of Peter Bradley regarding BRANDON ELLIS.

8.    Letter from Meggin Boranian to Peter Bradley offering a "name clearing" hearing.

9.    Letter from Greg Groeneveld to Peter Bradley offering a "name clearing" hearing.

10.    Any and all documents produced pursuant to trial subpoena to the Custodian of Records

26

for the Sanger Police Department.

11.     Any and all documents produced pursuant to trial subpoena to the Custodian of Records for Table Mountain Tribal Police Department.

12.     All exhibits to the deposition of Dr. Stephen Shohet, M.D.

IX.  Discovery Documents To Be Used At Trial (Answers To Interrogatories And Responses To Requests For Admissions

**A.  Plaintiff's Discovery Documents To Be Used At Trial**

1.     REEDLEY POLICE DEPARTMENT Responses to Specially Prepared Interrogatory, Set Number One.

2.     REEDLEY POLICE DEPARTMENT's Responses to Requests for Production of Documents, Set Number one.

3.     Deposition Testimony as needed from:

    A.     James Garcia

    B.     Preston Ballinger

    C.     Chief Douglas Johnson

    D.     Lt. Steven Wright

    E.     Lt. Joe Garza

    F.     Kristi Mooradian

    G.     Pamela Lammers, M.D.

    H.     George Tamberi

    I.     Mike McGee

    J.     Dr. Shohet

    K.     Brandon Ellis

**B.  Defendants' Discovery Documents To Be Used At Trial**

1.     Plaintiff's Response To Defendants' Specially Prepared Interrogatories.

2.     Deposition of BRANDON ELLIS.

3.      Deposition of Dr. Pamela Lammers, M.D.

4.      Deposition of Dr. Stephen Shohet, M.D.

5.      Deposition of James Garcia

        Any and all depositions where necessary due to unavailability of a witness and/or for purposes of impeachment.

X.  Further Discovery or Motions

        Plaintiff is not aware of, and does not contemplate any, further discovery or law and motion.  Defendants do not anticipate the need for any further discovery.  The only anticipated pretrial motions will be motions in limine.

XI.  Stipulations

        Defendants would ask that Plaintiff stipulate to exclusion of all evidence or reference pertaining to any causal connection between Plaintiff's alleged migraine or other type of headaches and his prior history of cancer and/or cancer treatment such that the parties can stipulate to not call their expert witnesses on this causal connection, Dr. Pamela Lammers, M.D. for Plaintiff, and Dr. Stephen Shohet, M.D. for Defendants.

XII.  Amendments/Dismissals

A.      **Plaintiff's Contentions:**

        No amendments are presently contemplated.  Chief Johnson was dismissed by stipulation.

B.      **Defendants' Contentions:**

        The Court, on March 22, 2007, filed its Opinion and Order summarily adjudicating Plaintiff's Second, Third and Fourth Causes of Action for disability discrimination, failure to provide a reasonable accommodation, and failure to engage in the interactive process.  Therefore, these three causes of action are no longer at issue.

XIII.  Settlement Negotiations

        The parties engaged in private mediation on July 31, 2006, before mediator, Thomas Simonian; however the case did not settle.  On February 26, 2007, Magistrate Sandra Snyder

28

vacated the parties' mandatory settlement conference pending the Court's determination on Defendant's Motion for Summary Judgment/Partial Summary Judgment which had been taken under submission at that time.  The parties have the option to re-calendar a settlement conference before Magistrate Snyder before trial.  The parties are discussing a further mediation in front of a retired federal judge.

XIV.  Agreed Statement

**A.     Plaintiff's Position:**

Presentation of the case on an Agreed Statement of Facts is not feasible.

**B.     Defendants' Proposal**:

Plaintiff was a former probationary police officer employed by Defendants.  Defendants terminated Plaintiff's probationary employment on October 11, 2004.  Plaintiff alleges that Defendants published certain comments to third parties pertaining to his termination which Plaintiff alleges was damaging to his reputation.  Plaintiff asserts that he was entitled to a hearing from Defendants to "clear his name".  Plaintiff is seeking relief for this alleged failure of Defendants to provide him with due process for the deprivation of his liberty interest.  Defendants deny all of Plaintiff's allegations.

XV.  Separate Trial Of Issues

Plaintiff and Defendants do not anticipate the need for a separate trial of any of the issues in this matter except to the extent the Court, sitting without a jury, may decide whether to award injunctive relief after a jury finding of liability.

XVI.  Impartial Experts - Limitation Of Experts

Defendants do not anticipate the need for an impartial expert witness.  However, Defendants do not see the need for Plaintiff's expert witness, Dr. Pamela Lammers, M.D. or Defendants' expert, Dr. Stephen Shohet, M.D. should the Plaintiff stipulate or the Court decide certain evidentiary matters on Defendants' motions in limine.  These two experts were designated for the purposes of testifying as to the causal connection between Plaintiff's alleged migraine

headaches and his prior history of adolescent cancer and/or cancer treatment which pertained to Plaintiff's allegations of a protected "disability" under the Fair Employment and Housing Act (Cal. Gov't Code 12940 et. seq.).  As the Court has summarily adjudicated Plaintiff's causes of action for disability discrimination, failure to provide a reasonable accommodation and failure to engage in the interactive process, any evidence or reference to Plaintiff's prior history of cancer and/or cancer treatment and its connection to any of Plaintiff's present day headaches are irrelevant.  If a stipulation can be reached, or the Court finds otherwise on Defendants' motions in limine, Defendants do not see that there will be a need for these two experts' testimony.

As to all other experts, no other limitation is anticipated except to the extent that no expert should be permitted to testify on subjects not disclosed by Plaintiff's Expert Witness Disclosure and/or opinions not disclosed in the expert's reports or depositions.

## XVII.  Attorneys' Fees

Attorney's fees are sought by the Plaintiff under 42 U.S.C. § 1988.  Plaintiff anticipates that such fees will be awarded by a post-trial motion.

Defendants are not seeking attorney's fees at this time.

## XVIII.  Further Trial Preparation

### A.  Final Witness List

The parties are ordered to file and serve their final list of witnesses by Thursday, May 24, 2007.  Additionally, at that time Plaintiffs shall disclose the order of witnesses so that Defendants will be prepared for cross-examination.

Except upon the showing set forth above in section VII, a party may not add witnesses to the final list of witnesses, or to any other updated witness list, who are not disclosed in this Order in Section VII.

### B.  Trial Briefs

The parties are directed to file and serve a Trial Brief by May 10, 2007.  Local Rule 16-285.  The parties need not include in the Trial Brief any issue that is adequately addressed in a

motion in limine, or in an opposition brief to a motion in limine.  Any response to a Trial Brief shall be filed and served by May 17, 2007.

### C.  Duty of Counsel to Pre-Mark Exhibits

The parties are ordered to confer no later than April 23, 2007, for purposes of pre-marking and examining each other's exhibits.  All joint exhibits must be pre-marked with numbers preceded by the designation JT/-- (e.g., JT/1, JT/2).  All of Plaintiffs' exhibits shall be pre-marked with numbers.  All of Defendants' exhibits shall be pre-marked with letters.

1.  Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a)  Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff Thursday, May 24, 2007, one for use by the Courtroom Clerk and the other for the court; and

(b)  One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2.  Counsel are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a)  Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above.  Joint exhibits shall be listed on a separate index, and shall be admitted into evidence on the motion of any party, without further foundation.

(b)  As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiffs' Exhibit 1 or Defendants' Exhibit A, and shall  be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

(c)  Those exhibits to which the only objection is a lack of foundation shall be

marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or Defendants' Exhibit B - For Identification, and indexed in a column entitled "Objection Foundation."

(d) Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately, e.g., Plaintiffs' Exhibit 3 - For Identification or Defendants' Exhibit C - For Identification, and indexed in a third column entitled "Other Objection" on the offering party's index.

3. Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|---|---|---|---|---|

Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders.

The court has no objection to counsel using copies. However, the copies must be legible. If any document is offered into evidence that is partially illegible, the court may sua sponte exclude it from evidence.

D. Discovery Documents

By Thursday, May 24, 2007, each party shall file a list of all discovery documents the party intends to use at trial. The list shall indicate whether each discovery document has previously been lodged with the Clerk. If the discovery document has not been previously lodged, the party shall so lodge the document with the Courtroom Clerk by Thursday, May 24, 2007.

E. Motions In Limine Hearing and Briefing Schedule

The hearing for motions in limine will be held on May 21, 2007, at 1:30 p.m. in courtroom 2. In addition to addressing any filed motions in limine, at that time the court will also settle, to the extent possible, any other matter pertaining to the conduct of the trial.

Counsel are expected to be fully cognizant of the legal issues involved in the case

32

1  by the date of the hearing for motions in limine.

2         By 4:00 p.m. on April 30, 2007, all motions in limine, with supporting points and

3  authorities, shall be filed and served either personally or by facsimile upon opposing counsel.

4         By 4:00 p.m. on May 10, 2007, opposition to any motion in limine shall be filed

5  and served either personally or by facsimile upon opposing counsel.  If a party does not oppose a

6  motion in limine, that party shall file and serve in the same manner a Statement of Non-

7  Opposition to that motion in limine.

8         By 4:00 p.m. on May 15, 2007, any reply to an opposition shall be filed and served

9  either personally or by facsimile upon opposing counsel.  Because the court will need time to

10  prepare for the hearing on May 21, 2007, the court is not inclined to consider late reply briefs.

11      F.  Morning Conferences During Trial

12         During the trial, it is the obligation of counsel to meet with the court each morning

13  to advise the court and opposing counsel as to what documents are proposed to be put into

14  evidence that have not previously been admitted by stipulation, court order, or otherwise ruled

15  upon.  The court will rule on those documents, to the extent possible, prior to the commencement

16  of trial each day out of the presence of the jury.  If the ruling depends upon the receipt of

17  testimony, the court will rule as requested upon the receipt of such testimony.

18         The court shall consider any other legal matter at morning conferences as well.

19  The court does not wish to recess the trial to hear legal argument outside of the presence of the

20  jury, and proper preparation by counsel will eliminate the need for that result.

21      G.  Order Of Witnesses

22         In order to make the trial operate efficiently and smoothly, each counsel has the

23  continuing obligation to advise opposing counsel as to what witnesses he or she intends to call at

24  each trial session.

25      H.  Voir Dire

26         The parties shall file proposed voir dire questions, if any, by  Thursday, May 24,

27

28                         33

1   2007.

2   Additionally, in order to aid the court in the proper voir dire examination of the

3   prospective jurors, counsel are directed to lodge with the court on the first morning of trial a list of

4   the prospective witnesses they expect to call, omitting any witness listed in this Pretrial Order

5   whom the party no longer intend to call.  This list shall contain the names of the each witness, and

6   the business and/or home address of each witness.

7   I.  Proposed Jury Instructions

8   The parties shall file proposed jury instructions by  Thursday, May 24, 2007, along

9   with a copy of the proposed instructions on a CD-ROM disc, preferably formatted for

10   WordPerfect 8.  Alternatively, the parties may e-mail a copy of the proposed jury instructions,

11   preferably formatted for WordPerfect 8 or higher to awiorders@caed.uscourts.gov.

12   All proposed printed jury instructions shall be in duplicate.  One set shall indicate

13   the party proposing the instruction, with each instruction numbered or lettered, shall cite

14   supporting authority, and shall include the customary "Given, Given as Modified, or Refused,"

15   showing the court's action with regard to each instruction.  The other set shall be an exact copy of

16   the first set, but shall be a "clean" copy that does not contain the identification of the offering

17   party, supporting authority, or reference to the court's disposition of the proposed instruction.

18   The parties are ordered to confer immediately after the May 21, 2007 hearing on

19   motions in limine to determine which instructions they agree should be given.  As soon as

20   possible thereafter, the parties shall submit a list of joint, unopposed instructions.  As to those

21   instructions to which the parties dispute, the court will conduct its jury instruction conference

22   during trial at a convenient time.

23   J.  Proposed Verdict Form

24   Each party shall file a proposed verdict form by  Thursday, May 24, 2007.

25   K.  Use Of Videotapes

26   Any party wishing to use a videotape for any purpose during trial shall lodge a

27

28                                                      34

copy of the videotape with the Courtroom Clerk on  Thursday, May 24, 2007.  If a written transcript of audible words on the tape is available, the court requests that the transcript be lodged with the court, solely for the aid of the court.

L.  Use of Videotapes

If counsel intends to use a laptop computer for presentation of evidence, they shall contact the courtroom deputy clerk at least one week prior to trial.  The courtroom deputy clerk will then arrange a time for counsel to bring the laptop to the courtroom, and meet with a representative of the Information and Technology Department and receive a brief training session on how counsel's equipment interacts with the court's audio/visual equipment.  If counsel intends to use PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

M.  Agreed Summary Of The Case

The parties shall lodge with the Courtroom Clerk a joint agreed summary of the case, briefly outlining the positions of the parties by  Thursday, May 24, 2007.  The summary will be read to the jury panel at the outset of the trial solely for the purposes of assisting in the jury selection process.  The contents of the summary shall not be deemed to be evidence or an admission or stipulation by a party as to any contested fact or issue.

XIX.  Objections to Pretrial Order

Any party may, within ten (10) calendar days after the date of service of this order, file and serve written objections to any of the provisions of this order.  Local Rule 16-283.  Such objection shall specify the requested corrections, additions or deletions.

FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.

1  XX.  Rules of Conduct During Trial

2  A.  General Rules

3      1.  All participants in the trial shall conduct themselves in a civil manner.  There

4  shall be no hostile interchanges between any of the participants.

5      2.  All oral presentations shall be made from the podium, unless otherwise

6  permitted by the court.

7      3.  Sidebar conferences are discouraged.  Legal arguments or discussion of issues

8  outside the presence of the jury should be done during recesses.

9      4.  Counsel shall advise their respective clients and witnesses not to discuss any

10 aspect of the case in the common areas of the courthouse accessible to the jurors, such as

11 the lobby, the elevators, the hallways and the cafeteria.

12 B.  Jury Selection

13     1.  The court will conduct voir dire to be supplemented by any written questions

14 submitted by counsel prior to trial and after the court has concluded its questioning of the

15 jury panel.  In some circumstances, the court may allow brief direct questioning by

16 counsel.

17 C.  Opening Statements

18     1.  Counsel may use visual aids in presenting the opening statement.  However, any

19 proposed visual aids shall be shown to opposing counsel before opening statement.

20 D.  Case in Chief

21     1.  Counsel shall have his/her witnesses readily available to testify so that there are

22 no delays in the presentation of evidence to the trier of fact.

23     2.  At the close of each trial day, counsel shall disclose his/her anticipated witnesses

24 and order of presentation for the next day, so that any scheduling or evidentiary issues may

25 be raised at that time.

26 E.  Witnesses

27

28

1. Before approaching a witness, counsel shall secure leave of court to approach the witness.

2. Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

F.  Exhibits

1. All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

2. An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of court to publish the exhibit.

3. The court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

G.  Objections

1. No speaking objections or arguments are permitted in the presence of the jury. Counsel shall state the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated.  The court will permit counsel to argue the matter at the next recess.

2. The court will not assume that any objection made also implies with it a motion to strike an answer that has been given.  Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

H.  Closing Argument

1. Counsel may use visual aids in presenting the closing argument.  However, any proposed visual aids shall be shown to opposing counsel before closing argument.

IT IS SO ORDERED.

**Dated:   April 23, 2007             /s/ Anthony W. Ishii**
UNITED STATES DISTRICT JUDGE

37